LYONS & FLOOD, LLP
65 West 36th Street, 7th Floor
New York, New York 10018
(212) 594-2400

Attorneys for Plaintiff
ALBERT MARINE CONSTRUCTION, INC

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE**

| | |
|---|---|
| ALBERT MARINE CONSTRUCTION, INC., | Civil Action No. |
| Plaintiff, | |
| v. | |
| PROSIGHT SPECIALTY INSURANCE GROUP, INC. (as successor in interest to NYMAGIC, Inc.), | **COMPLAINT** |
| Defendant. | |

Plaintiff ALBERT MARINE CONSTRUCTION, INC. ("Albert Marine") by its

attorneys, LYONS & FLOOD, LLP, as and for its Complaint against Defendant PROSIGHT

SPECIALTY INSURANCE GROUP, INC. (as successor in interest to NYMAGIC, Inc.)

("ProSight"), states as follows:

1.      Albert Marine is a privately held New Jersey business corporation, authorized to

transact business in the State of New Jersey with a principal place of business in New Jersey.

2.      Albert Marine's business includes, but is not limited to, the installation of vinyl

sheet piling and bulkhead and pier construction.

3.      Albert Marine was contracted to perform the installation of vinyl sheets piles

(among other services) in conjunction with the construction of a large number of homes located

in the State of New Jersey, as part of a 445-unit luxury waterfront condominium development in West New York , Weehawken and Guttenberg, New Jersey (the "Port Imperial development.")

4.      Upon information and belief, ProSight is a business corporation organized under the laws of New York, with a principal place of business at 919 Third Ave, 10th Floor, New York.

5.      Upon information and belief, NYMAGIC, Inc. was a holding company that owned and operated, *inter alia*, New York Marine and General Insurance Company ("NYMAGIC").

6.      Upon information and belief, on or about late 2010, NYMAGIC, Inc. merged with ProSight.

7.      Upon information and belief, as a result of the merger, ProSight acquired certain of the rights and obligations of NYMAGIC, Inc., including the obligations NYMAGIC, Inc. had under the insurance policies it issued.

8.      NYMAGIC issued several insurance policies to Albert Marine, providing general liability insurance coverage.

9.      Upon information and belief, the coverage that NYMAGIC provided was within a specified coverage territory, and that coverage territory included anywhere in the continental United States.

10.     NYMAGIC issued the insurance policies with knowledge and expectation that Albert Marine's business activities would be anywhere Albert Marine performed its work, including anywhere in the continental United States, and specifically in the State of New Jersey.

**Underlying Actions**

11.     On or about April 22, 2008, Port Imperial Condominium Association, Inc.

("PICA"), a non-profit corporation organized under the laws of New Jersey filed a lawsuit in the

Superior Court of New Jersey, Hudson County, Law Division, bearing Docket No. HUD-L-

2054-08 (the "PICA Complaint"), naming K. Hovnanian Port Imperial Urban Renewal, Inc., a

New Jersey based subsidiary of Hovnanian Enterprises, Inc. (collectively "Hovnanian"), which is

a large, publicly traded real estate company and home developer, Barton & Associates, Inc., an

architectural firm, and Paulus, Sokolowski and Sartor, Inc., an engineering firm, as defendants.

(A copy of the PICA Complaint is annexed hereto as Exhibit A.)

12.     The PICA Complaint alleged the existence of defects and deficiencies in the Port

Imperial development and sought recovery for negligent construction, breach of express and

implied warranty, breach of contract, strict liability, consumer fraud, violation of the Planned

Real Estate Development Full Disclosure Act (N.J.S.A. 45:22A-23), willful and wanton

disregard for human safety, architectural malpractice, and structural engineering malpractice.

13.     On or about March 31, 2010, a second lawsuit was filed relating to the Port

Imperial development by Port Imperial Property Owners Association, Inc. ("PIPOA"), the entity

designated to take over the ownership, maintenance and infrastructure for the Jacobs Ferry and

Bull Ferry neighborhoods of the Port Imperial development, in the Superior Court of New

Jersey, Hudson County, Law Division, bearing Docket No. HUD-L-1988-10 (the "PIPOA

Complaint"), naming Hovnanian as defendants. (A copy of the PIPOA Complaint is annexed

hereto as Exhibit B.)

14.     The PIPOA Complaint alleged that Hovnanian breached the redevelopment

agreement under which it had acquired the Port Imperial development, by failing to properly

construct the bulkhead and waterfront walkway in a good and workmanlike manner, or was negligent in failing to repair these structures.

15.     On or about June 21, 2010, Hovnanian filed a third-party complaint in the PIPOA action against some of its subcontractors and other parties involved in the Project Imperial development, including PSS, New Jersey Drilling, Addablock Limited, Inc., Breese Corporation, U.S. Wick Drain, Inc., Drainage & Ground Improvement, Densification, Inc., Albert Marine, as well as a number of John Doe entities. (A copy of Hovnanian's Third-Party Complaint is annexed hereto as Exhibit C.)

16.     Hovnanian's Third-Party Complaint alleged that Albert Marine "provided supplies and/or services related to the bulkhead during the construction of the Port Imperial development" and sought contribution, contractual indemnification, common law indemnity, as well as recovery for alleged breach of subcontract/construction defect, and breach of contract for failure to obtain required insurance.

17.     Plaintiffs in the underlying actions, including but not limited to, PICA and PIPOA, made allegations of construction and design deficiencies with respect to the Port Imperial development and have alleged sustaining property damage, including but not limited to, damage to the bulkhead and waterfront walkway areas.

18.     Plaintiffs in the underlying actions, including but not limited to, PICA and PIPOA, have provided expert reports and invoices detailing property damage to numerous areas of the Port Imperial development, including the bulkhead and waterfront walkway areas where Albert Marine performed its work. (A copy of the January 5, 2011, report of PIPOA's expert, Julian M. Toneatto, Ph.D. of Adler Engineers, Inc., is annexed hereto as Exhibit D.)

19.     The total amount of damage in the underlying actions have yet to be determined. Based on the allegations and expert opinions disclosed in the underlying actions however, the damages sought will be in excess of several million dollars.

20.     Subject matter jurisdiction is premised on complete diversity of citizenship pursuant to 28 U.S.C. § 1332, the plaintiff being a citizen of New Jersey for diversity purposes and the defendant being a citizen of New York for diversity purposes, and the amount in controversy exceeding $75,000, exclusive of interest and costs.

21.     This Court has personal jurisdiction over the defendant. Defendant has conducted business in, and has had continuous and systematic contacts with, the State of New Jersey. In addition, the claims arise from the defendant's issuance of insurance policies which provide coverage for activities performed in New Jersey.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this federal judicial district.  Moreover the Port Imperial development and the underlying actions are located in Hudson County.

## COUNT ONE: DECLARATORY JUDGMENT

23.     Albert Marine repeats and incorporates the allegations contained in the foregoing paragraphs of the Complaint as if fully set forth at length herein.

24.     Albert Marine is a named insured on Policy Nos. MMO18746ML598, MMO20444ML599, and MMO20807ML599 issued by NYMAGIC (the "Policies").

25.     Policy No. MMO18746ML598 was effective from April 4, 1998 to April 4, 1999, and provided marine general liability insurance coverage to Albert Marine. (A copy of Policy No. MMO18746ML598 is annexed hereto as Exhibit E.)

26.     Policy No. MMO20444ML599 was effective from April 4, 1999 to April 4, 2000, and provided marine general liability insurance coverage to Albert Marine. (A copy of Policy No. MMO20444ML599 is annexed hereto as Exhibit F.)

27.     Policy No. MMO20807ML599 was effective from April 4, 2000 to April 4, 2001, and provided marine general liability insurance coverage to Albert Marine. (Documents evidencing the existence of Policy No. MMO20807ML599 are annexed hereto as Exhibit G.)

28.     Albert Marine paid costs of premium to NYMAGIC over the life of the Policies in consideration of the coverage for defense and indemnification afforded by the terms therein.

29.     The underlying complaints and the allegations contained therein are directly covered by the aforementioned Policies. (See Exhibits E, F, and G.)

30.     By letter dated February 15, 2011, Albert Marine tendered notice of claim with respect to the underlying actions and made demand for defense and indemnification. (A copy of the February 15, 2011 tender letter is annexed hereto as Exhibit H.)

31.     By letter dated February 25, 2011, a Claims Specialist with ProSight Specialty Insurance Company, third-party administrator of NYMAGIC, acknowledged receipt of Albert Marine's tender and indicated that additional time was needed to contemplate the request. (A copy of the February 25, 2011, response from NYMAGIC is annexed hereto as Exhibit I.)

32.     By letter dated June 6, 2011, counsel for NYMAGIC refused to defend or indemnify Albert Marine against the claims in the underlying actions. (A copy of the June 6, 2011 disclaimer letter is annexed hereto as Exhibit J.)

33.     By letter dated July 6, 2011, Albert Marine responded to the June 6, 2011 disclaimer letter, refuting the grounds for the disclaimer of coverage and renewing its demand

for defense and indemnification. (A copy of the July 6, 2011, second tender letter is annexed

hereto as Exhibit K.)

34.     To date, no response has been received from ProSight, NYMAGIC, or its counsel

to Albert Marine's July 6, 2011, second tender letter.

35.     ProSight, as successor in interest to NYMAGIC, has a duty to defend Albert

Marine against any actions regarding covered occurrences or for occurrences arising out of

coverage.

36.     ProSight has breached that duty by refusing to defend or indemnify Albert Marine

in the underlying actions.

**WHEREFORE**, Albert Marine demands that the Court enter an order compelling

ProSight to acknowledge its duty to defend, reimburse Albert Marine for all expenses and legal

fees already incurred in its defense after February 15, 2011, and for all future legal fees, court

costs and expenses incurred in the future regarding this suit, the underlying actions, and arising

out of the applicable policies pursuant to Rule 4:42-9(a)(6) of the New Jersey Court Rules, and

all such other relief as the Court deems just and proper.

## COUNT TWO: BREACH OF CONTRACT

37.     Albert Marine repeats and incorporates the allegations contained in the foregoing

paragraphs of the Complaint as if fully set forth at length herein.

38.     Upon information and belief, under the terms and conditions of the Policies,

ProSight owes to Albert Marine, coverage, defense, and indemnification in the underlying

actions to the extent that the claims therein may be substantiated. (See Exhibits E, F, and G.)

39.     Failure to uphold the duties and responsibilities obligated by the Policies

constitutes a wrongful breach of the terms therein, which require that ProSight provide a defense

for covered occurrences or for occurrences arising out of coverage. (See Exhibits E, F, and G.)

40.     Albert Marine has incurred expenses in the defense of the underlying actions and

in asserting the claims within this declaratory action.

41.     Albert Marine will continue to incur expenses in the future associated with its

defense of the underlying actions and in the claims asserted within this declaratory action.

**WHEREFORE**, Albert Marine demands that the Court enter an order compelling

ProSight to perform its obligations under the Policies by defending Albert Marine in the

underlying actions, reimburse Albert Marine for all expenses and legal fees already incurred in

its defense after February 15, 2011, and for all future legal fees, court costs and expenses

incurred in the future regarding this suit, the underlying actions, and arising out of the applicable

policies pursuant to Rule 4:42-9(a)(6) of the New Jersey Court Rules, and all such other relief as

the Court deems just and proper.

## COUNT THREE: BAD FAITH DENIAL OF COVERAGE

42.     Albert Marine repeats and incorporates the allegations contained in the foregoing

paragraphs of the Complaint as if fully set forth at length therein.

43.     By letter dated February 15, 2011, ProSight was made aware that Albert Marine

was named as a defendant in Hovnanian's Third-Party Complaint. (See Exhibit H.)

44.     By same correspondence, ProSight became aware of the factual allegations

contained in Hovnanian's Third-Party Complaint and their relation to Albert Marine's

involvement in the Port Imperial project, which was alleged to have sustained property damage.

(See Exhibit H.)

45.     By same correspondence, ProSight became aware that the dates of Albert

Marine's work performed at the Port Imperial development alleged to have sustained property

damage were within the periods of coverage contained in the Policies. (See Exhibit H.)

46.     By same correspondence, ProSight became aware that litigation against Albert

Marine had commenced and that legal services had been provided on Albert Marine's behalf,

including but not limited to, serving written discovery and receiving responses thereto, retention

of an expert, participation in case management conferences and proceedings, and engaging in

settlement negotiations. (See Exhibit H.)

47.     By same correspondence, ProSight received notice of Albert Marine's claim and

demand for defense and indemnification. (See Exhibit H.)

48.     Albert Marine provided ProSight with sufficient notice of claim and basis thereof

for ProSight to determine that coverage is mandated under the Policies. (See Exhibit H.)

49.     Despite notice, ProSight denied coverage and defense of Albert Marine's claim.

(See Exhibit J.)

50.     ProSight's denial of coverage has no basis in either fact or law and is without

debatable reason.

51.     As a direct consequence of ProSight's bad faith denial of coverage, Albert Marine

has suffered harm.

**WHEREFORE**, Albert Marine demands that the Court enter an order reimbursing

Albert Marine for all expenses and legal fees already incurred in its defense after February 15,

2011, and for all future legal fees, court costs and expenses incurred in the future regarding this

suit, the underlying actions, and arising out of the applicable policies pursuant to Rule 4:42-

9(a)(6) of the New Jersey Court Rules, punitive damages, and all such other relief as the Court

deems just and proper.

Plaintiff demands a trial by jury.

Dated: December 16, 2011

LYONS & FLOOD, LLP
Attorneys for Plaintiff
ALBERT MARINE CONSTRUCTION, INC.

By: _____
Jon Werner, Esq.
65 West 36th Street, 7th Floor
New York, New York 10018
(212) 594-2400

U:\FLOODDOC\2604015\Legal\Coverage\Complaint.doc